IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA LYNN WIEDMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:18-CV-2697-DMC<br><br><br><u>MEMORANDUM OPINION AND ORDER</u> |

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (ECF Nos. 6 and 8), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c).  Pending before the court are the parties' briefs on the merits (ECF Nos. 15 and 21).

        The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  <u>See</u> <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support

a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the matter will be remanded for further proceedings.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

| | | |
|---|---|---|
| Step 1 | | Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied; |
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted; |

| | | |
|---|---|---|
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

///

///

///

///

## II. THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security benefits on July 30, 2014. See CAR 29.[1] In the application, plaintiff claims disability began on September 15, 2010. See id. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on March 15, 2017, before Administrative Law Judge (ALJ) Vincent A. Misenti. In a June 23, 2017, decision, the ALJ concluded plaintiff was not disabled from the alleged onset date of September 15, 2010, through the established onset date of May 12, 2017, based on the following relevant findings:

1. Since the alleged onset date, the claimant has the following severe impairment(s): polymyalgia, depression, and anxiety; since the established onset date of May 12, 2017, plaintiff has the following severe impairment(s): polymyalgia, depression, anxiety, and acute leukemia;

2. Prior to May 12, 2017, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that met or medically equaled an impairment listed in the regulations;

3. Prior to May 12, 2017, the claimant had the following residual functional capacity: medium work except the claimant could not have worked in loud environments; she could have understood, remembered, and carried out simple, routine, and repetitive tasks; she had sufficient judgment to make simple work-related decisions; she could have had no more than occasional social interaction with coworkers and the public; and she could not have performed at a production rate pace, but she could have performed task- or goal-oriented work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there were jobs that existed in significant numbers in the national economy that the claimant could have performed between the alleged onset date of September 15, 2010, through the established onset date of May 12, 2017;

5. Since May 12, 2017, and through the date of the decision, plaintiff has been disabled under Listing of Impairments 13.06 relating to acute leukemia.

See id. at 31-40.

After the Appeals Council declined review on June 12, 2018, this appeal followed.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on March 12, 2019 (ECF No. 10).

## III.  DISCUSSION

As outlined above, plaintiff's application for benefits was granted based on disability relating to acute leukemia beginning on May 12, 2017.  Plaintiff challenges the Commissioner's determination that she was not disabled from the alleged onset date of September 15, 2010, through May 12, 2017.  With respect to this determination, plaintiff argues: (1) the ALJ improperly rejected the medical opinions of examining professionals, Drs. Mattesich, Giannuli, Torrez, and Barnes; (2) the ALJ improperly rejected plaintiff's statements and testimony as not credible; (3) the ALJ improperly addressed lay witness evidence; and (4) the ALJ's vocational findings are not supported by substantial evidence.

### A.    Medical Opinions

"The ALJ must consider all medical opinion evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion. See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016). Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing

so. See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining

1  professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

2  conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,

3  1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see

4  also Magallanes, 881 F.2d at 751.

5         At Step 4, the ALJ evaluated the medical opinion evidence to determine plaintiff's

6  residual functional capacity.  See CAR 36-38.  With respect to plaintiff's physical abilities, the

7  ALJ gave "reduced weight" to the conclusions proffered by the the opinion stage agency

8  consultative examining physician Dr. Barnes.  Id. at 36.  Instead, the ALJ relied on the opinions

9  of the non-examining agency consultative doctors.  See id.  Regarding plaintiff's mental

10  functioning, the ALJ also gave "reduced weight" to the opinion of examining psychologist, Dr.

11  Torrez, id. at 38, and again relied on the opinions of the agency non-examining professionals,

12  Drs. Smith and Rualock, see id. at 27.  The ALJ also discussed the opinions of Drs. Mattesich and

13  GIannuli, state agency doctors who both conducted mental status examinations.  See id. at 36-37.

14  The ALJ, however, did not specifically assign any particular weight to these doctors' opinions.

15         Plaintiff contends the ALJ improperly rejected the medical opinions of examining

16  professionals, Drs. Mattesich, Giannuli, Torrez, and Barnes.

17         1.     Dr. Mattesich

18         Regarding Dr. Mattesich's opinions, the ALJ stated:

19  
> . . .Robert Mattesich, LEP, a state agency psychologist who examined the claimant in connection with a prior claim, opined on May 8, 2013, that the claimant has a low tolerance for stress.  Her anxiety symptoms appear to worsen when she has to interact with others and she would likely have difficulty maintaining social functioning where she had to interact with supervisors, coworkers, or the public [Exhibit 6F].

CAR 36.

24         According to plaintiff, the ALJ erred by not provided any reasons for rejecting Dr.

25  Mattesich's opinions.  Plaintiff contends:

> . . .The ALJ summarized Dr. Mattesich's opinion at Tr. 36, but gave no reasons for rejecting the limitations he described. The very low tolerance for stress and the limited ability to interact with the public, coworkers, and supervisors described by Dr. Mattesich should, at the very least, have been presented to the vocational expert to determine how they

7

might impact Plaintiff's ability to sustain work activity. The ALJ erred in failing to do so and in failing to provide any reasons to reject the opinion of this examining doctor.

ECF No. 15, pgs. 7-8.

Though, as outlined above, the ALJ did not specifically assign Dr. Mattesich's opinions any particular weight, it is clear from the totality of the ALJ's opinion that Dr. Mattesich's opinions were accepted and incorporated into the residual functional capacity finding. The ALJ determined that, prior to May 12, 2017, when plaintiff became disabled due to acute leukemia, plaintiff had the residual functional capacity to perform medium work. The ALJ specified exceptions due to mental impairments. Contrary to plaintiff's assertion, the ALJ accounted for the limitations opined by Dr. Mattesich and concluded plaintiff could not perform high-stress work or jobs involving more than occasional social interactions.

### 2. Dr. Giannuli

The ALJ stated as follows with respect to Dr. Giannuli

> Dr. Giannuli, another consultative psychologist, who examined the claimant in April 2015, opined the claimant's ability to perform detailed and complex tasks is moderately impaired. In the presentation of severe panic attacks and breadth of fear that she has presented, performing detailed and complex tasks is going to be impossible. The claimant's ability to accept instructions from supervisors is unimpaired. She is personable. She never had a history of hostility toward others and she follows directives and she is also easy to redirect. The claimant's ability to interact with coworkers and the public is moderately impaired in that her anxiety may increase her fear of well-being and mistrust of others. Specifically, she experiences significant startle reactions and hypersensitivity, anxiety with noise and in the presence of other people even her own family members. The claimant's ability to perform work activities on a consistent basis without special or additional instruction is moderately impaired for the same constellation of symptoms and severity of symptoms stated above. The claimant's ability to maintain regular attendance in the workplace is moderately impaired for the same reason noted above the panic attacks and depression and exacerbate symptomatology resulting in poor attendance. The claimant's ability to complete a normal workday and work week without interruptions from psychiatric condition is moderately impaired for the same reason as noted above due to exacerbation of symptoms and presentation of panic attacks. The claimant's ability to deal with the usual stress encountered in the workplace is moderately impaired. The claimant has limited coping skills in dealing with everyday predictable events. Additional stress will exacerbate her symptoms and her subsequently her work performance [Exhibit 10F].

CAR 37.

As with Dr. Mattesich, plaintiff contends the ALJ erred by not providing any specific weight to Dr. Giannuli's opinions. Plaintiff argues:

> The ALJ summarized Dr. Giannuli's opinion, but did not give any reasons for rejecting any of the limitations Dr. Giannuli described. (Tr. 37-38.) The ALJ purported to accept instead the opinions of the non-examining state agency psychological consultants (Tr. 38), but did not explain why these opinions were allegedly more consistent with Plaintiff's treatment records than the opinions of the doctors who actually examined Plaintiff. The limitations Dr. Giannuli assessed in performing activities consistently without special supervision, maintaining regular attendance, or dealing with normal work stress would undoubtedly result in a finding of disability if properly considered.

ECF No. 15, pg. 9.

Here, the Court agrees with plaintiff. Just as it is clear the ALJ accepted Dr. Mattesich's opinions by incorporating them into the residual functional capacity assessment, it is clear that the ALJ rejected some of Dr. Giannuli's opinions by not incorporating them. Specifically, and as acknowledge by the ALJ, Dr. Giannuli opined that plaintiff has significant limitations associated with attendance and completing a workday without interruptions from psychological symptoms. For example, Dr. Giannuli noted that plaintiff experienced panic attacks and depression resulting in poor attendance. Dr. Giannuli also opined that panic attacks, as well as hypersensitivity and a severe startle response to noise, would result in impairments to plaintiff's ability to complete a workday. None of these limitations is accounted for in the ALJ's description of plaintiff's residual functional capacity and the ALJ did not provide any reasons for rejecting these limitations.

The court concludes the matter should be remanded to the agency to allow for additional consideration of Dr. Giannuli's opinions, particularly those relating to plaintiff's ability to maintain attendance and complete a workday, and to provide a rationale should the doctor's opinions not be accepted.

/ / /

/ / /

/ / /

       3.     Dr. Torrez

As to Dr. Torrez, who opined regarding mental limitations, the ALJ stated:

> Dr. Torrez, the psychologist who evaluated the claimant at her representative's request, opined on February 23, 2017, that the claimant had mostly mild to moderate limitations with regard to mental work abilities. She had marked limitations with regard to the following abilities: perform activities within a schedule, maintain regular attendance, by punctual within customary tolerances, complete a normal workday or work week without interruptions from psychological symptoms, and perform at a consistent pace without an unreasonable number or length of rest periods. . . . [Exhibit 17F].
>
> . . .The opinion of Dr. Torrez is given reduced weight as it is inconsistent with the rest of the record. Whereas treatment notes and other assessments indicate moderate symptom severity and limitations, Dr. Torrez's opinion is the only one that indicates marked limitations.

CAR 37-38.

According to plaintiff:

> . . . The ALJ summarized Dr. Torrez's opinion, but gave it "reduced weight," asserting it was inconsistent with the record. The ALJ asserted Dr. Torrez's opinion was the only one in the record indicating marked limitations, while the other examining sources assessed moderate limitations. (Tr. 37-38.) Contrary to the ALJ's assertions, Dr. Torrez examined Plaintiff in 2017, nearly 2 years after Dr. Giannuli and 4 years after Dr. Mattesich.Dr. Torrez noted, and both Plaintiff's own testimony and the statements of both lay witnesses indicate, that Plaintiff's condition has gotten worse over time. Thus, it is logical that by the time Dr. Torrez examined Plaintiff, Plaintiff had more extensive limitations than she did when examined by the other doctors or in 2015 when the state agency doctors reviewed the record. The ALJ has not provided clear and convincing reasons for discounting this examining doctor's opinion which, if credited, would establish that Plaintiff is disabled by her mental impairments.

ECF No. 15, pg. 10.

Plaintiff's argument is persuasive. It is clear from the ALJ's decision that plaintiff was found to be disabled as of May 2017. Dr. Torrez examined plaintiff in February 2017 – close to this onset date. As plaintiff observes, the deterioration of plaintiff's condition over time could explain why Dr. Torrez described plaintiff's limitations as to attendance and maintaining a workday as marked. The ALJ does not appear to have taken the proximity of Dr. Torrez' evaluation to plaintiff's May 2017 onset date into account. Nor does the ALJ account for the similarities between Dr. Torrez' opinions and those expressed by Dr. Giannuli in April 2015

1   relating to attendance and maintaining a workday.  Contrary to the ALJ's conclusion, Dr. Torrez'

2   opinions are entirely consistent with Dr. Giannuli's opinions.

3           The court finds the matter should be remanded to allow the agency to fully

4   consider the opinions expressed by Dr. Torres regarding plaintiff's attendance and ability to

5   maintain a workday and to provide rationale should those opinions be rejected.

6           4.     <u>Dr. Barnes</u>

7           As to Dr. Barnes, who opined regarding physical limitations, the ALJ stated:

8-10
> . . .Dr. Barnes, the State agency consultative orthopedist who examined the claimant in April 2015, opined she can lift and carry 10 pounds frequently and occasionally, stand and walk for six hours in combination, and sit for 6 hours in an eight-hour day.  She can occasionally perform postural and manipulative activity [Exhibit 11F].

11-12
> The opinion of Dr. Barnes is significantly at odds with the benign examination findings in his report.  Reduced weight was therefore given to the opinion of Dr. Barnes. . . .

13  CAR 36.

14  Plaintiff asserts:

15-21
>     The ALJ gave "reduced weight" to Dr. Barnes' opinion, asserting it was "significantly at odds with the benign examination findings in his report." The ALJ asserted the state agency reviewing doctors had more records available to review than Dr. Barnes and accepted their opinions that Plaintiff could perform medium exertional level work. (Tr. 36.). . . . Dr. Barnes's examination notes were not "benign," as the ALJ asserts, indicating a positive response to all 18 of the fibromyalgia tender points and decreased range of motion in Plaintiff's lumbar spine, consistent with Dr. Barnes' ultimate conclusions regarding Plaintiff's functioning. The ALJ erred in rejecting the opinion of this examining doctor based on the incorrect assumptions that Dr. Barnes did not have records to review and that Dr. Barnes did not do a tender point examination for fibromyalgia.

22  ECF No. 15, pg. 11.

23          Here, the ALJ rejected Dr. Barnes' opinions primarily because he found them "at

24  odds" with the doctor's own "benign" findings.  The court has examined Dr. Barnes' report,

25  contained in the record at Exhibit 11F.  <u>See</u> CAR 590-96.  Contrary to the ALJ's assessment, Dr.

26  Barnes' report is replete with objective findings that cannot fairly be described as "benign."

27  Most notably, Dr. Barnes observed that plaintiff "is tender in all 19 areas described for

28  ///

11

fibromyalgia. . . ." CAR 593. The ALJ's reason for rejecting Dr. Barnes' opinion is simply not supported by the record.

The matter will be remanded to allow the agency to further consider Dr. Barnes' opinions and, if not accepted, to provide a rationale supported by the record.

### B. Plaintiff's Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

///

///

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

At Step 4, the ALJ evaluated plaintiff's subjective statements and testimony in determining her residual functional capacity. See CAR 35-36. The ALJ summarized his evidence as follows:

> The claimant is a 59-year-old former phlebotomist who stopped working in 2010 because of widespread physical pain, memory loss, and impaired concentration. At the time, doctors were trying to diagnose her pain. She has taken neurogenic pain medication prescribed by a rheumatologist but could not tolerate it because it made her groggy. Now she takes 800 milligrams of ibuprofen three times per day for her pain, she also received pain shots from her rheumatologist every four months. The pain shots provide significant relief for about two months. Her pain is mainly focused in her shoulders, low back, neck, and occipital region. It has progressed over the last seven years. She experiences the pain every day with or without exertion. On a bad day, she rates her pain 9 on the Visual Analog Scale; on a good day, she rates it a 4 or 5. Most of the time the ibuprofen rest help alleviate the pain, but not always. Within a couple of hours of waking up, the claimant feels spent and must rest. Her condition interferes with her sleep and she uses body pillows to get comfortable. She estimates she can sit for 20 minutes, stand for 30 minutes, and carry 8 pounds. If she walks, she starts hurting all over. She does very little around the house because she is limited by pain, but reports she can do dishes, light cooking, and laundry.

/ / /

/ / /

> The claimant has a history of depression that first manifested when she was 46. She also experiences anxiety that can be debilitating. In addition to symptoms like mood swings and crying spells, she reports her mental impairments interfere with memory, focus, and being in the moment. She misses out on a lot of family functions because she doesn't like to leave her house or be around a lot of people. She finds social interaction to be draining. The claimant sees a therapist regularly but reports she could not do a simple routine job because she has difficulty with mobility and focus. She testified that if she worked a full day the way she is now, an employer would let her go.

CAR 35.

The ALJ then discussed plaintiff's subjective statements and testimony in the context of the objective medical evidence:

> In terms of the claimant's alleged musculoskeletal pain, the evidence does not document the necessary findings or longitudinal treatment for fibromyalgia going as far back as the alleged onset date. Even though the claimant's rheumatologist has ruled out inflammatory arthritis and the claimant has a normal autoimmune panel, the record does not contain documentation of trigger points and it is not clear that other potential causes for the claimant's pain has been ruled out. He notes only that her symptoms are suggestive of fibromyalgia [Exhibits 7F, 13F, and 16F].
>
> Contrary to the claimant's allegations at the hearing, her treatment notes indicate that her pain is intermittent and fluctuating – not constant. Moreover, she reported that medication relives her pain and demonstrated clinical improvement. Additionally, the notes describe consistent denials of symptoms decreased mobility, difficulty sleeping, nocturnal pain, or weakness [See, e.g., Exhibit 16F14, 16].
>
> The orthopedic consultative examiner who saw the claimant in April 2015 conducted an exam that was objectively normal with only subjective complaints [Exhibit 11F]. The undersigned finds the claimant's pain complaints to be well supported by the record, but her allegations regarding the limiting effects of her pain and her physical abilities are not as well supported.
>
> With regard to the claimant's mental impairments, it would appear these are more significant than her physical problems. She has a consistent history of treatment, and has from time to time required additional care including hospitalization at the recommendation of her primary care provider [Exhibit 3F4-10]. She experiences panic attacks and is uncomfortable outside the area of her home, but she can nevertheless leave her home when she needs to. She adjusts her daily activities so to avoid crowds and does not keep up with socializing. The claimant has experienced clinical improvement of her mental impairments with treatment also [Exhibits 2F-4F, and 18F].

///

///

> However, the undersigned notes that assessments of the claimant by three consulting psychologists over the years have consistently documented findings of impaired memory, concentration, and social functioning [Exhibits 6F, 10F, and 17F].
>
> * * *
>
> While it is clear that the claimant's impairments cause some limitations, the record as a whole does not support a finding that these limitations completely precluded substantial gainful activity prior to May 2017.

CAR 35-36.

The Court finds the ALJ's credibility analysis flawed. The ALJ rejected plaintiff's statements and testimony as to the severity and debilitating effects of her impairments because he found then unsupported by the record as a whole. The Court does not agree. As discussed above, the record contains opinions from Drs. Giannuli and Torrez regarding plaintiff's difficulties with attendance and ability to maintain a workday. Contrary to the ALJ's assessment, this evidence supports plaintiff's subjective statements and testimony and explains why plaintiff is as limited as she says she is.

The matter will be remanded for a new credibility assessment in light of proper consideration of the medical opinion evidence.

### C. Lay Witness Evidence

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e). Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment." See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." Dodrill, 12 F.3d at 919. When rejecting third party statements which are similar in nature to the statements of plaintiff, the ALJ may cite the same reasons used by the ALJ in rejecting the plaintiff's statement. See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving

///

rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

        Regarding lay witness evidence of record, the ALJ stated:

> The undersigned has also considered the third-party statements submitted by the claimant's mother and friend, who both describe the claimant's decline over time [Exhibit 11E and 12E]. While both accounts were credible, they do not amount to evidence of greater limitations than the undersigned has found herein.

CAR 38.

The court finds this analysis patently deficient. While the ALJ acknowledges that both lay witnesses described plaintiff's deterioration and found both statements credible, the ALJ provides no explanation whatsoever for his final conclusion that, nonetheless, the accounts do not support greater limitations. Though the ALJ purports to accept the lay witness evidence, the lay witness evidence was in fact rejected without reasons germane to each witness.

        The matter will be remanded for further consideration and discussion of the lay witness evidence of record.

        **D.**    <u>**Vocational Findings**</u>

        The Medical-Vocational Guidelines (Grids) provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See <u>Heckler v. Campbell,</u> 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

        The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See <u>Jones v. Heckler,</u> 760 F.2d 993, 998 (9th Cir. 1985); <u>see</u> <u>also</u> <u>Heckler v. Campbell,</u> 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on

///

///

exertional strength factors only.[2] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sulliacvan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

---

[2] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1   value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

2   the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

3   hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

4   substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

5   Cir. 1988).

6          According to plaintiff:

> In *Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988), the Ninth Circuit stated that hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant. If the vocational expert's hypothetical assumptions are incomplete or lack support in the record, the opinion based thereon has no evidentiary value. Here, the ALJ omitted Plaintiff's credible allegations, the limitations described by two lay witnesses, and the limitations assessed by four of Plaintiff's examining doctors, as detailed above. Because the VE's testimony that Plaintiff could perform the occupations identified by the ALJ was based on the ALJ's failure accurately to pose all of Plaintiff's limitations, the VE's testimony that Plaintiff can perform those occupations has no evidentiary value. The ALJ's decision is based on evidence which has no evidentiary value, and so that decision is not based on substantial evidence.
>
> ECF No. 15, pg. 15.

16          Given the errors identified above, the court finds plaintiff's argument here

17   regarding the ALJ's vocational findings persuasive.  In particular, a review of the hearing

18   transcript reflects that the ALJ's hypothetical questions posed to the vocational expert did not

19   take into account the significant limitations identified by Drs. Torrez and Giannuli as to plaintiff's

20   attendance and ability to maintain a workday.  Absent valid reasons to reject these limitations, the

21   ALJ erred in not including them in hypothetical questions.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

### IV. CONCLUSION

For the foregoing reasons, this matter will be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is granted;
2. Defendant's motion for summary judgment (ECF No. 21) is denied;
3. The Commissioner's final decision is reversed and this matter is remanded for further proceedings consistent with this order; and
4. The Clerk of the Court is directed to enter judgment and close this file.

Dated: May 8, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE